And we move to the fourth case this morning, U.S. v. Solanzaro. Good morning, may it please the court. My name is Amir Mohabit. I am the counsel for the appellant, Mr. Jose Garcia Solarzano. Your Honor, this appeal raises one issue. That is whether District Court Judge Tharp erred in imposing his sentence the way he did upon Mr. Solarzano. It is the appellant's position that the court did make that error. Specifically, Mr. Solarzano was sentenced without the benefit of acceptance of responsibility points after pleading guilty well in advance of trial. Trial was never even scheduled. In determining that the two-level reduction did not apply, the District Court also did find that a two-level enhancement did apply because the co-defendant, Mr. Robinson, possessed a gun as part of the narcotics transaction that gave rise to the count of conviction, the narcotic conspiracy count. So Mr. Mohabit, what other way, let me put it this way, why wasn't the District Court's interpretation of this statement from Robinson that he would provide security in the future legitimately interpreted as armed security? Maybe there are some other ways to look at it, too, but that's not the test. The test was the District Court's understanding of that statement within the boundaries. So why wouldn't it be? And if it is within the boundaries, why don't you get that double whammy with no acceptance of responsibility and the enhancement for, you know, that he got for the use of the weapon? Thank you, Your Honor, because as it states in the PSR, and it is uncontroverted anywhere in the record, and as I also point out on page two of the reply brief in the second full paragraph, Mr. Osoriozano does not speak English. Mr. Robinson does not speak Spanish. It's not exactly clear who Mr. Robinson was talking to or texting to when he referenced providing security. But Mr. Osoriozano did not understand there to be a gun or that there ever would be a gun. But do we know that to the degree you're talking about? People might not speak another language fluently, but very often, you know, they'll understand a few key words in another language and gestures are possible. The record, the facts found were that Robinson conveyed somehow to Osoriozano that he would provide security. And, I mean, as somebody who's bumbled around with languages a lot myself, I mean, there are plenty of things that I can say that don't make me a fluent speaker. So you would say, you know, why not defer to the district court's fact finding? Well, Your Honor, the record indicates that Mr. Osoriozano had an interpreter all throughout this case and that he did not speak English. And if we have to pick a side, does he speak a little bit or does he speak none? I think the record indicates he does not speak any. Mr. Mobot, let me make an observation here. It seems very weird to me that two gentlemen would be in a car together going to a drug deal when they didn't understand a word of what the other was saying. It seems very weird that you would bring muscle to provide security at a drug deal and neither of you could understand one word that the other said. Doesn't that just seem weird? I mean, I guess your client would wonder if he doesn't understand him, what is he doing in the car with me when I'm going to sell drugs? No, Your Honor, because the organization that sent Mr. Osoriozano or at whose behest Mr. Osoriozano was there for is the same organization Mr. Robinson was at the behest of. They were both at the same place on the same time on a limited need-to-know information basis. Somebody else who was not a defendant in this case, maybe not even in the United States, was communicating with both of these people and telling them where to go, what to do. So for that reason, and I understand why the organizations work like that to keep people in the dark so they cannot then cooperate against that third party I'm referencing. And also, Mr. Robinson used the word, quote-unquote, security. You can't really gesture with your hands what security is. A gun you can hold your hands at a certain, like I'm doing now on camera, that could show a gun. But he didn't use the word gun. He used the word security. And I understand that to have been in a text message to somebody, perhaps a third party, but I don't think it was Mr. Osoriozano. And even if it was, he doesn't speak English anyway, as the record indicates. Now, the government will tell you Mr. Osoriozano couldn't possibly be as naive as he really is because back down in Mexico, he worked as a police officer. That is true. He did work as a police officer. But as the PSR makes clear, this occasion was the first time he had come to the United States. And it's not, we cannot assume he was familiar with what Mr. Robinson's habits may be. He had met Mr. Robinson before. The fact that Mr. Osoriozano was a police officer is tragic and sad and true, but I don't think that gives enough for the judge at the district court level to make the assumptions that he did based on this record and withholding acceptance and also the double whammy Judge Wood referenced of giving the enhancement. I do note that there is a typographical error on page three of the appellant's brief. The section summary of the argument in the second line, I make a reference to how Mr. Osoriozano should have received a three-point reduction and an additional one point that would total four. That was a typo. It should have set two points and one point for a total of three. So I also think that when the district court judge reviewed, did its analysis under 3E1.1 and 2D1.1, there really wasn't a bifurcation of that analysis. It was really one big universal analysis, and I don't think that was appropriate either. I see I've entered my rebuttal time. If I may keep a little bit of time, please. Thank you. Good morning. May it please the court. The district court's within guideline sentence of 48 months imprisonment was free from any error. The district court correctly declined to reduce defendant's sentence for acceptance of responsibility after finding that defendant was falsely denying relevant conduct up to and including the time of his sentencing. This decision is well supported by the evidence and by defendant's refusal to acknowledge that his co-defendant armed himself with a firearm and that it was reasonably foreseeable that the co-defendant would have a firearm as part of the co-defendant's role in providing security for the defendant and for the cocaine they intended to sell. Ms. McLennan, can I ask you, what was the evidence in the record that Mr. Solorzano knew that the co-defendant was providing security? You know, this is an interesting argument, at least, that they didn't speak each other's language and they were receiving messages from a third party and didn't know what the other was doing. I suspect that you would probably disagree with that characterization of the evidence. Yes, Your Honor. So, Mr. Solorzano admitted in his plea agreement that the co-defendant had offered to provide him security. However, in the record, there's also a Santiago proffer from the government that details many of the text messages in both English and Spanish between the co-defendants. And one of those text messages occurred after defendant was robbed of three kilograms of cocaine that he was trying to sell. His co-defendant told him, you should have taken me to watch your back. Cars can be replaced, but I wouldn't want anything to happen to you. Now, cars were the co-defendant's code for kilograms of cocaine. Now, defendants, the co-defendant also admitted, which is included in the Santiago proffer, that he, that in his post-mortem statement, that he had offered to provide security for the defendant, and that that's, that provision, that offer was made after the defendant was robbed of those three kilograms. Now, the district court reasonably inferred from all of this evidence that the defendant knew that he was engaged in a dangerous business and that as a law enforcement officer of 20 years standing in Mexico, he was well aware of the common sense link between guns and drugs that this court has previously recognized. It was reasonably foreseeable to the defendant that his co-defendant would be armed at the sale of 343 grams of cocaine that they were attempting at the time of their arrests. The co-defendant was only fulfilling his role as security and defendant by his own admissions is the one who set up the attempted sale to the undercover police officer. It is reasonable to infer the defendant brought his co-defendant to the sale for a purpose, and that purpose was to provide armed security so that defendant would not be robbed of cocaine again. Now in his plea agreement, defendant challenged that the co-defendant even had a firearm in his possession at the time of their arrests. The defense attempted to further distance the defendant from the firearm at sentencing by stating that defendant never said that his co-defendant said he would provide security. Defendants continued denials regarding the firearm were both false and frivolous. Let me ask you about that, the frivolous nature of this issue. Below in the district court, did the defendant ever challenge the two-level firearm enhancement? I know that we just it's not on it's not up on appeal, but did he challenge that below? Yes, the defendant challenged the two-level enhancement pursuant to 2D1.1 for a firearm, and then he also. Yeah, no, that's what makes it relevant, right? Because otherwise, what difference does it make whether he admits that he knew the defendant had a gun or not? I mean, I get your point that you don't just bring muscle to a drug transaction, right? And that's what the district judge found when he said security, he's armed with a firearm, he's going to a very dangerous spot. You don't just generally bring muscle with you, right? And I think that's Judge Tharp concluded. But if he conceded that the firearm enhancement applied, which is where we're at on appeal, then whether or not he admitted that he knew his co-defendant had a gun probably doesn't matter, I guess. But that was not what happened down below, is what you're saying? That is not what happened down below. And we're arguing that he was falsely denying the relevant conduct, that it was reasonably foreseeable to him that his co-defendant would have a firearm given these conversations between the two of them. Now, pleading guilty alone is just not enough to entitle the defendant to acceptance of responsibility. And the district court's refusal to apply a sentence reduction here is without error. So can I go back up for a minute? I mean, other than the fact that Mr. Solorzano had an interpreter throughout the record about either his facility in English or about Robinson's Spanish vocabulary? So in this government Santiago proffer, there was a series of text messages in both English and Spanish between the co-defendants. Some of the text messages written by this defendant are in English and some of the messages by the co-defendant are written in Spanish. Okay, thank you. Unless the court has further questions, I'll close by asking you to affirm the conviction and sentence in this case. Thank you. Mr. Mohamed. Thank you, Your Honor. Very briefly, my understanding based on everything Mr. Solorzano has said to me and also on the record is he does not speak English and he never has. The government has referenced its own Santiago proffer for some sort of evidence that Mr. Solorzano does speak at least some English. The case did not go to trial. The Santiago proffer was never admitted by the district court. And it's not, I don't think that was the basis that the district court even relied on in reaching the sentence that it did. And I also would point out that while the plea agreement does have references to text messages, Mr. Solorzano did try to backpedal the comments he told me moments before the sentencing hearing about some of the language that's in the plea agreement. I think it also pertained to the text messaging. I realized that that doesn't sound like a whole lot, but I think it sheds a little bit of light on Mr. Solorzano's language and language choices or language ability, I should say. Does the court have any other questions? No. Thanks to counsel. The case is taken under advisement.